## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MILES STERLING BENCH,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-22-66-G** |
| | ) | |
| **CHRISTE QUICK, Acting Warden,** | ) | **(Capital Case)** |
| **Oklahoma State Penitentiary,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPLY TO RESPONSE
## TO PETITION FOR WRIT OF HABEAS CORPUS

ROBERT S. JACKSON, OBA # 22189
1300 N.W. 10th St.
Oklahoma City, OK 73106
Telephone: (405) 602-8614
Facsimile: (405) 400-2167
bob@bobjacksonlaw.com

ALYSSA DONOVAN FARRELL, OBA # 32304
P.O. Box 52192
Tulsa, OK 74152
Telephone:  (405) 439-1264
alyssa.d.farrell@gmail.com

COUNSEL FOR PETITIONER, MILES STERLING BENCH

May 8, 2023

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

REPLY TO GROUND ONE                    Mr. Bench must be re-tried in federal court because Oklahoma lacks jurisdiction to prosecute him.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

REPLY TO GROUND TWO                    Mr. Bench's Constitutional rights were violated through the ineffective assistance of trial counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

REPLY TO GROUND THREE                  Appellate counsel was ineffective in violation of Mr. Bench's Constitutional Rights. . . . . . . . . 15

    a.    Appeal Counsel failed to obtain a more specialized MRI so as to adequately support the related claims raised on direct appeal.. . . . . . . . . . . . . . . . . . . 15

    b.    Appeal counsel failed to raise the Indian Country jurisdictional claim.. . . 16

    c.    Failure to raise trial court's error in answering jury question about meaning of life without parole. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    d.    Failure to raise issue of erroneous admission of Mr. Bench's statements to Deputy Short. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

REPLY TO GROUND FOUR                   Mr. Bench's jury should have been given the option of convicting him of a lesser included offense.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

REPLY TO GROUND FIVE                   The trial court erroneously admitted Mr. Bench's custodial statements in violation of his Constitutional rights. . . . . . . . . . . . . . . . . . . 21

REPLY TO GROUND SIX                    Prosecutorial misconduct served to deprive Mr. Bench of his Constitutional right to a fair trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

REPLY TO GROUND SEVEN                  The heinous, atrocious, and cruel aggravating

circumstance is Constitutionally vague, and the evidence was insufficient to support it. . . . . . 23

REPLY TO GROUND EIGHT      Insufficient evidence supports the continuing threat aggravating circumstance. . . . . . . . . . 23

REPLY TO GROUND NINE      Mr. Bench's execution offends the Eighth Amendment due to his young age. . . . . . . . . 23

REPLY TO GROUND TEN      Cumulative Error. . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## Attachments

*State ex rel Mashburn v. Hon. Misak*, No. PR-2022-370 (Okla. Crim. App. April 18, 2023) (unpub.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Att. 1

*Byrd v. State*, Muskogee County Case No. CF-2017-621, Order denying application for post-conviction relief (June 21, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Att. 2

*Byrd v. State*, OCCA No. PC-2022-170, Petition in Error (Feb. 17, 2022) . . . . . . . . Att. 3

*Cruse v. State*, Murray County No. CF-2000-105, Application for Post-Conviction Relief (May 13, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Att. 4

*Wahpekeche v. State*, Cleveland County No. CF-2013-236, Order denying second post-conviction application (July 31, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Att. 5

*Wilson v. State*, No. PC-2019-670, Order denying post-conviction appeal (Okla. Crim. App. March 2, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Att. 6

# <u>TABLE OF AUTHORITIES</u>

## Federal Cases

*Ake v. Oklahoma*, 470 U.S. 68 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Anderson v. Sirmons*, 476 F.3d 1131 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Beck v. Alabama*, 447 U.S. 625 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bentley v. Havonek*, 2022 WL 1400285, Report and Recommendation (W.D. Okla. Mar. 30, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Bouie v. City of Columbia*, 378 U.S. 347 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Byrd v. Workman*, 645 F.3d 1159 (10th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15

*Coleman v. Thompson*, 501 U.S. 722 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Cruz v. Arizona*, 143 S.Ct. 650 (Feb. 22, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Deerleader v. Crow*, 2021 WL 150014 (N.D. Okla. Jan. 15, 2021) . . . . . . . . . . . . . . . . . 3

*Florida v. Powell*, 559 U.S. 50 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Frank v. Mangum*, 237 U.S. 309 (1915) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Harrington v. Richter*, 562 U.S. 26 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Harris v. Reed*, 489 U.S. 255 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hogan v. Gibson*, 169 F.3d 1239 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hooks v. Ward*, 184 F.3d 1206 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Johnson v. Martin*, 3 F.4th 1210 (10th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Johnson v. Mississippi*, 486 U.S. 578 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Lynch v. Arizona*, 578 U.S. 613 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Maes v. Thomas*, 46 F.3d 979 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Maynard v. Cartwright*, 486 U.S. 356 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*McGirt v. Oklahoma*, 140 S.Ct. 2452 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14

*Michigan v. Long*, 463 U.S. 1032 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Murphy v. Royal*, 866 F.3d 1164 (10th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Murphy v. Royal*, 875 F.3d 896 (10th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

*Picard v. Connor*, 404 U.S. 270 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sexton v. Beaudreaux*, 138 S. Ct. 2555 (2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Sharp v. Murphy*, 140 S.Ct. 2412 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Simmons v. South Carolina*, 512 U.S. 154 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Solem v. Bartlett*, 465 U.S. 463 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Stringer v. Black*, 503 U.S. 222 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Taylor v. Workman*, 554 F.3d 879 (10th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Teague v. Lane*, 489 U.S. 288 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Cronic*, 466 U.S. 648 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. John*, 437 U.S. 634 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Wahpekeche v. Pettigrew*, No. CIV-21-1106-PRW, Report and Recommendation of Magistrate Judge (W.D. Okla. June 28, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12

*Williams v. Trammell*, 539 F.App'x 844 (10th Cir. 2013) (unpub.). . . . . . . . . . . . . . . . 20

*Wilson v. Oklahoma*, 141 S.Ct. 224 (October 5, 2020) . . . . . . . . . . . . . . . . . . . . . . . . 13

**State Cases**

*Bench v. State*, 2021 OK CR 12, slip op. (Okla. Crim. App. May 6, 2021) (subsequently withdrawn from publication) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

*Bench v. State*, 431 P.3d 929 (Okla. Crim. App. 2018) . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Bench v. State*, 504 P.3d 592 (Okla. Crim. App. 2021) . . . . . . . . . . . . . . . . . . . . 4, 16, 17

*Bosse v. State*, 484 P.3d 286, 2021 OK CR 3 (Okla. Crim. App. 2021) (withdrawn from publication) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*State ex rel Mashburn v. Hon. Misak*, No. PR-2022-370 (Okla. Crim. App. April 18, 2023) (unpub.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*State ex rel Matloff v. Wallace*, 497 P.3d 686 (Okla. Crim. App. 2021) . . . . . . . . . . . 3, 5

**Statutes**

18 U.S.C. § 1153 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3281 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 14

**Other Authorities**

*Rules of the Oklahoma Court of Criminal Appeals*, Rule 3.5 . . . . . . . . . . . . . . . . . . . . . 16

This brief replies to specific arguments in Respondent's Response (Doc. 30) without waiving any arguments raised in Mr. Bench's Petition for Writ of Habeas Corpus.

**REPLY TO GROUND ONE**          **Mr. Bench must be re-tried in federal court because Oklahoma lacks jurisdiction to prosecute him.**

This claim is not about setting Mr. Bench free or otherwise placing his conduct beyond the authority of any sovereign to prosecute.  Instead, the claim is about Oklahoma prosecuting a crime for which it had no jurisdiction and then imposing the harshest of penalties against Mr. Bench.  Here, under the Major Crimes Act, the United States is the only sovereign which may lawfully exercise jurisdiction over Mr. Bench.  He can and should be prosecuted in federal court for murder.  *See* 18 U.S.C. § 3281 (there is no statute of limitations for murder under federal law).

Respondent expressly concedes that Mr. Bench is a member of the Choctaw Nation and that the crime occurred within the boundaries of the Chickasaw Nation reservation.[1] Doc. 30 at 9 n.4.  Thus, upon merits review of the jurisdictional claim there is no dispute that the prerequisites for prosecution under the Major Crimes Act have been met.  *See* 18 U.S.C. § 1153.  Mr. Bench would further note that Respondent is oddly silent in its "Background" section about the OCCA's initial reversal of Mr. Bench's conviction for lack of jurisdiction. Ostensibly, Respondent is hesitant to admit that upon merits review even the OCCA was

---

[1] In addition to Mr. Bench being an Indian, Respondent acknowledges that the victim, B.H., was also member of the "federally recognized Choctaw Nation."  Doc. 30 at 9 n.4.

1

compelled to grant relief on the jurisdictional claim. *See* Doc. 19-1, *Bench v. State*, 2021 OK CR 12, slip op. (Okla. Crim. App. May 6, 2021) (subsequently withdrawn from publication) (granting post-conviction relief).

Next, Mr. Bench takes issue with Respondent's repeated references to his claim as a "prosecutorial authority claim" and a "*McGirt* Claim." The instant claim is most correctly described as an Indian Country *jurisdictional claim*. Respondent's nomenclature seeks to lessen the significance of the claim and avoid the reality that Mr. Bench's Constitutional right to Due Process was violated by his prosecution and conviction in a state court lacking competent jurisdiction. *See Frank v. Mangum*, 237 U.S. 309, 326 (1915) ("'due process of law that is required by the 14th Amendment'" includes prosecution "before a court of competent jurisdiction"). The instant claim does not rise and fall upon *McGirt*. Doc. 19 at 20. Instead, it is supported by earlier cases such as *Solem v. Bartlett*, 465 U.S. 463 (1984), and, as further indication that the claim is not controlled by *McGirt*, Mr. Bench raised the claim in his Post-Conviction Application that was filed approximately 28 months prior to *McGirt* being decided. Doc. 19 at 24 (table of dates).

As a preliminary matter, Respondent argues Mr. Bench's jurisdictional claim fails for a lack of clearly established federal law and that an Indian Country jurisdictional claim is not redressable upon federal habeas review. Doc. 30 at 11-13. Respondent's arguments are foreclosed by the Tenth Circuit's grant of habeas relief in *Murphy v. Royal*, 875 F.3d 896 (10th Cir. 2017), and the Supreme Court's affirmance of the same *Sharp v. Murphy*, 140

S.Ct. 2412 (2020).  In recently granting habeas relief on an Indian Country jurisdictional claim, the Northern District of Oklahoma observed there that "Respondent admits, and the Court Agrees, that § 2254(d) does not bar habeas relief because the OCCA's decision on Deerleader's jurisdictional claim is contrary to clearly established federal law." *Deerleader v. Crow*, 2021 WL 150014, *4 (N.D. Okla. Jan. 15, 2021).  Respondent's change of position here is not well taken.  Respondent seems to make a related argument that there is no clearly established law that the Major Crimes Act creates exclusive federal jurisdiction, as ostensibly Respondent contends Oklahoma maintains concurrent jurisdiction with the federal government for MCA offenses.  Doc. 30 at 11-12.  Respondent's cited authority of *United States v. John*, 437 U.S. 634 (1978), does not suggest or otherwise consider the possibility of concurrent jurisdiction, nor does *John* merely offer dicta as to its pronouncement that Mississippi lacked jurisdiction over a Major Crimes Act offense. *John* specifically held: "***We therefore hold*** that § 1153 provides a proper basis for federal prosecution of the offense involved here, and ***that Mississippi has no power similarly to prosecute Smith John for that same offense***." 437 U.S. at 634 (emphasis added).   Mr. Bench would also observe that Respondent's arguments about clearly established federal law are superfluous, in that the OCCA did not adjudicate the jurisdictional claim on the merits.  Instead, the OCCA denied the claim on procedural grounds pursuant to its new rule articulated in *State ex rel Matloff v. Wallace*, 497 P.3d 686 (Okla. Crim. App. 2021), which held it would not grant relief for convictions that became final prior to *McGirt* being decided by the Supreme Court on July

3

9, 2020. The clearly established federal law language of § 2554(d) only comes into play with a state court merits adjudication. In the absence of a merits ruling, this Court's review will be de novo. *See, e.g., Byrd v. Workman*, 645 F.3d 1159, 1166-67 (10th Cir. 2011); *see also Wahpekeche v. Pettigrew*, No. CIV-21-1106-PRW, Report and Recommendation of Magistrate Judge, pp. 10-12 (W.D. Okla. June 28, 2022) (explaining that OCCA's application of *Matloff* rule did not constitute a merits ruling for AEDPA purposes).

Next, Respondent defends the independence and adequacy of *Matloff* as a state procedural bar capable of precluding this Court's review. Doc. 30 at 13-32. With respect to independence, Respondent refuses to acknowledge that *Matloff* merely adopted and applied the federal law retroactivity framework from *Teague v. Lane*, 489 U.S. 288 (1989). *Id*. at 13-14. Respondent misconstrues the plain statement rule of *Harris v. Reed*, 489 U.S. 255 (1989), to argue that the OCCA's application of *Matloff* was independent of federal law. *Id*. at 14. *Harris* merely held that in order for a state procedural default to preclude federal review, the state court must "clearly and expressly" state that its judgment rests on a state procedural bar. 489 U.S. at 263. However, *Harris* did not hold that a state procedural bar is independent merely because the state court says so. The OCCA denied the instant claim solely by applying *Matloff's* non-retroactivity rule. *Bench v. State*, 504 P.3d 592, 597 (Okla. Crim. App. 2021). This does not establish independence. *See Florida v. Powell*, 559 U.S. 50, 67 (2010) ("We typically apply the *Long* presumption [that the state court decision is not independent of federal law] when the state court's decision cited a state constitutional

4

provision only a few times or not at all, and rested exclusively upon federal cases or upon state cases that themselves cited only federal law"). Here, review of *Matloff* reveals that OCCA merely adopted the federal law of *Teague v. Lane* in fashioning its rule barring post-conviction relief for those whose convictions became final prior to *McGirt*. *See Matloff*, 497 P.3d at 688-89 (discussing *Teague*, citing Oklahoma cases applying *Teague*, and expressly stating the OCCA was "following *Teague* and its progeny"). Thus, the OCCA's application of *Matloff* was merely an application of *Teague*[2], which causes the state court decision to rest upon federal law or be interwoven with federal law. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991) (citing *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)).

With respect to adequacy, Respondent attached more than one thousand pages of unpublished OCCA opinions, state court docket sheets, and pleadings relating to other cases in which defendants have raised Indian Country jurisdictional claims and the same have barred by the *Matloff* rule. Doc. 30, Exhs. 4-12. If anything, Respondent's references to other cases in which *Matloff* has been applied demonstrate the inadequacy of the rule in Mr. Bench's case. First, Respondent concedes *Matloff* sprung a brand new rule upon post-conviction petitioners, but then attempts to soften the import of the concession by claiming the "OCCA's general non-retroactivity rule is not new." Doc. 30 at 16-17. Respondent contends Mr. Bench should have been on notice of the non-retroactivity rule of *Matloff* prior

---

[2] While the OCCA attempted to apply *Teague*, that application was incorrect. *See* Doc. 19 at 19-23.

to it being announced, despite the OCCA not even being aware of the applicability of Respondent's asserted "general non-retroactivity rule" as evidenced by its initial grants of relief in Mr. Bench's case and others.  *See, e.g.*, *Bosse v. State*, 484 P.3d 286, 2021 OK CR 3, ¶ 22 (Okla. Crim. App. 2021) (withdrawn from publication) (stating venerable maxim that "[s]ubject-matter jurisdiction may - indeed, must - be raised at any time" in finding jurisdictional claim properly raised in post-conviction application); Doc. 19, Att. 1, *Bench v. State*, 2021 OK CR 12, ¶ 15 (reproducing quoted portion of *Bosse*).  Further, judges of the OCCA continue to observe that *Matloff* announced a new rule that wasn't obvious to judges or litigants prior to its announcement.  *See State ex rel Mashburn v. Hon. Misak*, No. PR-2022-370, p. 5 of dissenting op. (April 18, 2023) (unpub.) (attached hereto as Att. 1) (Rowland, J., dissenting) ("The State cannot show a clear legal right to relief because ***the rule of law it relies upon***, and which the majority applies, ***did not come into existence until*** four months after Judge Misak's ruling, and three months after the State's legal right to appeal had expired.) (emphasis added); *see also id.* at p. 8 of dissenting op. (Lumpkin, J., dissenting) ("*Matloff* announced a new rule of criminal procedure; therefore, its holding should not be applied retroactively, just as it held the *McGirt* decision would not be applied retroactively.").  Given that *Matloff* announced a new and novel rule, it is not strictly, regularly, or evenhandedly applied so as to constitute an adequate state law procedural bar. *Maes v. Thomas*, 46 F.3d 979, 986 (10th Cir. 1995).

This acknowledged newness and novelty of the *Matloff* rule implicates further

adequacy considerations that were recently addressed by the Supreme Court in *Cruz v. Arizona*, which was decided after Mr. Bench filed his habeas petition.  143 S.Ct. 650 (Feb. 22, 2023).  In *Cruz*, the Arizona Supreme Court refused to classify *Lynch v. Arizona*, 578 U.S. 613 (2016), as a significant change in the law and thus barred Cruz from filing a post-conviction petition raising a claim under *Lynch*.[3]  The Supreme Court found Arizona's application of procedural bar to be inadequate because "'an unforeseeable and unsupported state-court decision on a question of state procedure does not constitute an adequate ground to preclude this Court's review of a federal question.'"  *Cruz*, 143 S.Ct. at 658 (citing *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964)).  Here too, the OCCA's fashioning of *Matloff*, which departed from Oklahoma's well settled rule that jurisdiction can be raised at any time is "thus the opposite of firmly established and regularly followed."  *Id*. at 659; *see also McGirt v. Oklahoma*, 140 S.Ct. 2452, 2501 n.9 (2020) (Roberts, J., dissenting) (finding in Oklahoma "issues of subject matter jurisdiction are never waived and can therefore be raised on a collateral appeal.").  Contrary to Respondent, Mr. Bench has not waived any argument that the *Matloff* rule is inadequate for the reasons stated in *Cruz*.  Doc. 30 at 27-28. With respect to adequacy and independence, Mr. Bench raised the issue in his Petition[4], then it was Respondent's burden to assert and prove the "affirmative defense of an independent

---

[3]*Lynch* held that the rule of *Simmons v. South Carolina*, 512 U.S. 154 (1994), that capital defendants must be allowed to inform their jury of parole ineligibility with a life sentence applied in Arizona.  143 S.Ct. at 654-55.

[4] Mr. Bench's Petition included, *inter alia*, an argument the *Matloff* was "brand new" thereby implicating the adequacy concepts discussed in *Cruz*.  Doc. 19 at 29.

and adequate state procedural bar." *Hooks v. Ward*, 184 F.3d 1206, 1217 (10th Cir. 1999);

*see also Anderson v. Sirmons*, 476 F.3d 1131, 1141 (10th Cir. 2007).  Now, Mr. Bench is

merely replying to Respondent's specific allegations regarding adequacy including

Respondent's attempt to distance the OCCA's application of *Matloff* from the recent decision

in *Cruz*.

      Next, Respondent claims Mr. Bench waived his adequacy arguments because he did

not make them before the OCCA.  Doc. 30 at 18.  Yet, Respondent fails to explain how Mr.

Bench could have possibly raised this issue in state court when federal habeas is the

exclusive forum for Mr. Bench to challenge whether a state procedural rule may operate to

preclude federal review.  *See Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) (it is a federal

question whether a state default matures into a federal procedural bar).   Respondent

somehow faults Mr. Bench for requesting the OCCA stay his post-conviction case while

*Matloff*'s certiorari proceedings were pending in the Supreme Court.  Doc. 30 at 18 (citing

Brief of Petitioner, OCCA No. PCD-2015-698 (Sept. 2, 2021)).  Yet, he specifically argued

in the brief that "Mr. Bench is *not* conceding that *Matloff* is dispositive in his case." Brief,

OCCA No. PCD-2015-698, p. 4, n.5 (Sept. 2, 2021).

      Further with respect to adequacy, Respondent claims Mr. Bench's posture of raising

the instant claim prior to his conviction becoming final and prior to the Supreme Court

deciding *McGirt* is not unique.  Respondent provides numerous and voluminous exhibits

documenting the OCCA's application of *Matloff* to preclude reversal of old convictions for

which Oklahoma lacked jurisdiction, but where the defendants' convictions had become final.   Doc. 30, Exhs. 4-12.   In the interest of economy, Mr. Bench will focus on Respondent's Exh. 8 - these are the cases which Respondent claims are in the same procedural posture as Mr. Bench and to which the OCCA applied *Matloff*.  *Id*. at 24-26 (discussing Exh. 8).   However, study of Respondent's proffered cases reveals that they are not what Respondent portrays them to be.   First, none of the 5 referenced cases are capital cases.   Thus, unlike Mr. Bench, none of these cases proceeded according to the Capital Post-Conviction Procedure Act, which required Mr. Bench to file his Original Post-Conviction Application in the OCCA while his direct appeal remained pending.  *See* Okla Stat. tit. 22, § 1089(D)(1).  Given the different post-conviction schemes between capital and non-capital cases, Respondent's case comparisons are akin to apples and oranges.

With respect to **Billie Byrd** (Doc. 30 at 24), Respondent fails to include that Byrd's Post-Conviction application filed May 29, 2019 was denied by the state district court on June 21, 2019 because it found the jurisdictional claim premature as *Murphy* remained pending on certiorari review in the Supreme Court.  *Byrd v. State*, Muskogee County Case No. CF-2017-621, Order denying application for post-conviction relief (June 21, 2019) (attached hereto as Att. 2).  Byrd did not appeal this post-conviction denial to the OCCA.  Then, after Byrd's conviction becoming final and post *McGirt*, Byrd filed a successive post-conviction application in the state district court on April 8, 2021 raising a jurisdictional claim which was denied on February 7, 2022.  *Byrd v. State*, No. PC-2022-170, Petition in Error (Feb. 17,

2022) (attached hereto as Att. 3).[5]  Byrd appealed the denial to the OCCA, which the OCCA declined to review pursuant to *Matloff* on Nov. 23, 2022.  *See* Doc. 30, Exh. 4 at 41-43 (reproducing OCCA order).  As shown, Byrd's jurisdictional claim was raised in a successive post-conviction application filed in 2021 after Byrd's conviction became final and after *McGirt* was decided.  Thus, Byrd is unlike Mr. Bench's case.

As for **Jason Cruse** (Doc. 30 at 24), his conviction became final nearly 20 years ago on July 8, 2003.  Mr. Cruse raised a claim on appeal that his crime occurred in a "dependent Indian Community," which the OCCA denied on the merits.  Doc. 30, Exh. 8 at 21, ¶ 14.  It was not until after *McGirt* that Mr. Cruse filed a post-conviction application asserting a jurisdictional claim in the district court of Murray County on May 13, 2021, which was denied by the state district court on August 13, 2021 and then appealed to the OCCA in No. PC-2021-1074.  *See Cruse v. State*, Murray County No. CF-2000-105, Application for Post-Conviction Relief (May 13, 2021) (attached hereto as Att. 4).  The OCCA barred consideration the jurisdictional claim pursuant to *Matloff* on January 19, 2022.  *See* Doc. 30, Exh. 5, pp. 204-05 (reproducing Order).  Thus unlike Mr. Bench, Mr. Cruse's jurisdictional claim, to which the OCCA applied *Matloff*, was raised both post *McGirt* and post Mr. Cruse's conviction becoming final.

---

[5] The Muskogee County district court docket sheet for No. CF-2014-621 is available on www.oscn.net and shows the filed date of the successive post-conviction application as July 8, 2021 and February 7, 2022 as the filed date for the Order denying the same.  Whether filed in April or July of 2021, both dates are post-*McGirt*.

The next case relied on by Respondent is **Tony Gipson** (Doc. 30 at 24). Mr. Gipson raised an Indian Country jurisdictional claim on direct appeal, which the OCCA rejected on the merits via an unpublished opinion on September 12, 2012, but due to other errors was remanded to the state district court for re-sentencing. Doc. 30, Exh. 8 at 27-33 (reproducing OCCA opinion). On November 14, 2014, Mr. Gipson was re-sentenced to life without the possibility of parole in Okfuskee County Case No. CF-009-84.[6] He did not appeal from the re-sentencing, and it was not until December 7, 2020, that Mr. Gipson filed a post-conviction application raising an Indian Country jurisdictional challenge. Gipson's jurisdiction claim was denied by the district court, which applied *Matloff*. *See* Doc. 30, Exh. 8 p. 43, Order denying post-conviction application (March 8, 2022). Gipson did not appeal the denial to the OCCA. Gipson's jurisdictional claim was raised post *McGirt* and post his conviction becoming final, not to mention the OCCA did not review the claim because Gipson did not appeal. Thus, Gipson's case is nothing like Mr. Bench's.

Next, Respondent cites **Thomas Wahpekeche** (Doc. 30 at 25). Wahpekeche's direct appeal contained a claim that the crime occurred in a dependent Indian community which was denied by the OCCA on April 27, 2017 upon a finding that the crime did not occur in Indian Country. Doc. 30, Exh. 8 at 71, OCCA Opinion. Wahpekeche filed a Second post-conviction application in the District Court of Cleveland County raising an Indian Country

---

[6]The Okfuskee County docket sheet for this case is available on www.oscn.net.

jurisdictional claim on September 4, 2019[7] (post-*Murphy*, but pre-*McGirt*, and after Wahpekeche's conviction became final). The district court reviewed the merits of the claim and specifically applying *McGirt* and *Murphy*, it found that the land in question was not Indian Country. *Wahpekeche v. State*, Cleveland County No. CF-2013-236, Order denying second post-conviction application (July 31, 2020) (attached hereto at Att. 5). Wahpekeche appealed the denial to the OCCA, which barred review of the claim pursuant to *Matloff* on September 30, 2021. Interestingly, Wahpekeche is presently seeking habeas corpus relief. *Wahpekeche v. Pettigrew*, CV-21-1106-PRW (W.D. Okla.). The case has progressed as far as the Magistrate Judge issuing an R&R. *Id*., R&R (June 28, 2022). The Magistrate Judge declined to give preclusive effect to the OCCA's application of *Matloff*, conducted de novo merits review, and found that the land in question was not Indian County. *Id*. at 13. While Wahpekeche is in a different procedural posture than Mr. Bench, having raised his jurisdictional claim after his conviction became final, not to mention that Wahpekeche's crime did not apparently occur in Indian Country, Mr. Bench would request that despite the dissimilarities he should also receive de novo merits review in this proceeding.

Lastly, Respondent relies on **Garry Wilson** (Doc. 30 at 25). Respondent fails to mention that Garry Wilson, sought certiorari review in the Supreme Court following the OCCA's pre-*McGirt* denial of his post-conviction appeal on procedural grounds finding the

---

[7]This date was obtained from the www.oscn.net docket sheet for Cleveland County Case No. CF-2013-236.

Indian Country issue could and should have been raised on direct appeal. *Wilson v. State*, No. PC-2019-670, Order denying post-conviction appeal, p.2 (Okla. Crim. App. March 2, 2020) (attached hereto as Att. 6). The Supreme Court granted, vacated, and remanded to the OCCA for further proceedings consistent with *McGirt*. *Wilson v. Oklahoma*, 141 S.Ct. 224 (October 5, 2020). Only upon remand, did the OCCA apply *Matloff* to bar review of Wilson's jurisdictional claim. *See* Doc. 30, Exh. 6, pp. 167-69 (reproducing Oct. 1, 2021 Order denying post-conviction appeal). Thus, it appears Wilson's procedural posture is similar to Mr. Bench's, but the OCCA's treatment of Wilson's claim was much different - the OCCA first barred Wilson by finding his Indian Country claim could have and should have been raised on direct appeal, and only upon remand from the Supreme Court did the OCCA apply the newly created *Matloff* Rule. The state court's vacillation of applying different bars to Wilson, demonstrates the inadequacy of the later applied *Matloff* rule. Mr. Wilson has sought habeas relief in the Northern District, but that Court has yet to rule on his Petition. *Wilson v. Nunn*, CV-21-445-JFH.

As shown, the cases advanced by Respondent as being the same as Mr. Bench's are not so similar. Byrd, Cruse, and Gipson all involved post-conviction applications filed post *McGirt* and post-finality of those respective convictions. Wahpekeche is pending habeas review in this Court and involves a dispute over whether the crime occurred in Indian Country.[8] Wahpekeche also involves a post-conviction application filed post-finality of

---

[8] Respondent does not dispute that Mr. Bench's offense occurred in Indian Country.

conviction, but pre-*McGirt*.  *Wilson*, appears to have a similar posture but for the OCCA applying differing procedural rules before and after the Supreme Court GVR'd the case in light of *McGirt*.  None of Respondent's cases demonstrate the adequacy of *Matloff* in Mr. Bench's unique circumstances.  This Court can and should review the claim de novo.

Finally, Mr. Bench replies to Respondent's extended alternative arguments that relief is precluded under § 2254(d), that relief is precluded under de novo review, and that relief cannot issue without the "benefit of the new rule in *McGirt*."  Doc. 30 at 32-60.  Mr. Bench would merely offer that were Respondent's arguments valid, the Tenth Circuit could not have granted the Writ in *Murphy*.  Many of Respondent's arguments are premised upon the dissenting opinion in *McGirt*, but obviously the dissent does not carry to force of law.  *See, e.g.*, Doc. 30 at 43, 53.  Next, Respondent's arguments that *Teague* bars relief are unavailing. *Id*. at 50.  *Murphy* specifically considered "[i]ndependent of AEDPA, the Supreme Court's *Teague* Doctrine" and found that "Teague does not pose a barrier to relief."  875 F.3d at 929 n.6.  Despite Respondent's contentions that *Murphy* did not fully consider *Teague* because the state did not raise such arguments there, it is clear that the Circuit "rais[ed] *Teague* [arguments] on the State's behalf."  *Id*.; Doc. 30 at 45-46.  And, even after considering the independent additional limitation of *Teague*, *Murphy* granted habeas relief.  As confirmation that *Murphy* was creating nothing new nor applying old law in such a novel way to create a new rule,  *McGirt* by its own language confirmed that opinion was announcing nothing new. 140 S.Ct. at 2464 ("In saying this we say nothing new."); *see also Stringer v. Black*, 503 U.S.

222, 227-29 (2010) (finding that habeas petitioner could rely *Maynard v. Cartwright* even though that case was decided after the petitioner's conviction became final, because *Maynard* broke no new ground than the earlier decision in *Godfrey v. Georgia*).

This Court should find that *Matloff* poses no obstacle to habeas relief; it should then review the jurisdictional claim de novo and grant relief upon the undisputed facts that Mr. Bench is an Indian and his crime occurred within Indian County.

**REPLY TO GROUND TWO**          **Mr. Bench's Constitutional rights were violated through the ineffective assistance of trial counsel.**

Mr. Bench stands on the arguments presented in his Petition with respect to Ground Two alleging multiple instances of ineffective trial counsel. *See* Doc. 19 at 31-58.

**REPLY TO GROUND THREE**          **Appellate counsel was ineffective in violation of Mr. Bench's Constitutional Rights.**

**a.    Appeal Counsel failed to obtain a more specialized MRI so as to adequately support the related claims raised on direct appeal.**

In the absence of a merits adjudication by the OCCA, review of this sub-claim must be de novo. *See Byrd*, 645 F.3d at 116-67. Respondent concedes that the OCCA declined to review the claim by applying a *res judicata* bar upon characterizing this claim as the same as the related trial counsel ineffectiveness claim raised on direct appeal. Doc. 30 at 86. The OCCA did not conduct review of Mr. Bench's claims premised upon *Ake v. Oklahoma*, 470 U.S. 68 (1985), and *United States v. Cronic*, 466 U.S. 648 (1984), that he was constructively denied appeal counsel due to the circumstances within the Oklahoma Indigent Defense

System resulting in the administration denying his counsel's funds request for reasonable and necessary expert assistance. *See* Doc. 19 at 60-61. The state court's application of *res judicata,* by casting the instant claim as the same as the one raised on direct appeal, overcomes the presumption of a merits adjudication. *See* Doc. 30 at 88. Here, the presumption is obviously overcome because "there is reason to think some other explanation for the state court's decision is more likely." *Harrington v. Richter*, 562 U.S. 26, 99-100 (2011); *see also id.* at 99 ("it may be presumed that the state court adjudicated the claim on the merits ***in the absence of any indication or state-law procedural principles to the contrary***"). This Court must conduct its review de novo.

**b.      Appeal counsel failed to raise the Indian Country jurisdictional claim.**

Respondent is incorrect in attempting to assert this claim is not properly before the Court or was inadequately raised below. Doc. 30 at 90. This aspect of ineffective appeal counsel was addressed by the OCCA on the merits. *Bench*, 504 P.3d 592, 599. The OCCA could have declined to review it pursuant to its waiver rule for inadequately raised claims, but it did not do so. *See Rules of the Oklahoma Court of Criminal Appeals*, Rule 3.5(A)(5). Also, Mr. Bench's presentation of the claim in his Post-Conviction Application was sufficient to constitute fair presentation under federal law. *See Picard v. Connor*, 404 U.S. 270, 278 (1971) (explaining fair presentation requirement as pre-requisite to federal review). Thus, appeal counsel's failure to raise a winning Indian Country jurisdictional claim is properly before the Court.

Next, Respondent's citation to *Bentley v. Havonek*, 2022 WL 1400285, Report and Recommendation (W.D. Okla. Mar. 30, 2022) (unpub.), should not inform the result here. Doc. 30 at 92.  First, Bentley's discrete ineffective appellate counsel claim was apparently unexhausted and subject to an anticipatory procedural bar.  2022 WL 1400285, *5.  Second, the Magistrate Judge reviewed the claim anyway given some uncertainties about its exhaustion status as a matter of equity. *Id*.  Because Bentley's direct appeal became final on May 18, 2017, when certiorari was denied, the Magistrate found no prejudice as there was not a reasonable probability Bentley could have obtained appellate relief at that time. *Id*. at *6.  For comparison purposes, the Tenth Circuit's initial decision in *Murphy*, 866 F.3d 1164, was issued on August 8, 2017, Mr. Bench's direct appeal, 731 P.3d 929, was denied on October 4, 2018, and his appeal became final, 140 S.Ct. 56, on October 7, 2019.  Thus, *Bentley* is much distinguished for Mr. Bench's case.

### c.    Failure to raise trial court's error in answering jury question about meaning of life without parole.

Respondent only addresses the prejudice aspect of this sub-claim.  Doc. 30 at 93-94. Given its silence, Respondent must therefore concede deficient performance of appeal counsel for failing to raise on direct appeal this clear violation of Oklahoma law by the trial court.

### d.    Failure to raise issue of erroneous admission of Mr. Bench's statements to Deputy Short.

The OCCA conducted merits review of this claim. *Bench*, 504 P.3d 592, 602-603

(specifically addressing claim of appellate ineffectiveness in relation to statements made to Deputy Short).  Thus, contrary to Respondent, the claim has not been waived and was fairly presented in state court.  Doc. 30 at 95.  Mr. Bench discussed the claim in detail in Ground 5 of his Petition for convenience and economy – so as to group the two instances involving erroneous admission of custodial statements and so as to comply with the Court's page limitation rules (G.O. 10-1).

Respondent argues the record demonstrates Mr. Bench was not in custody and spontaneously made statements to Deputy Short that he "may have killed someone."  Doc. 30 at 95.  However, the record is not so clear.  At trial, Short testified that with respect to the traffic stop everything was "done at gun point" and Mr. Bench's statements were made after following the Officer's commands to get on the ground.  Tr. VI 126, 134-35.  However, at the hearing on the motion to suppress the statement, the timing of events was discussed in greater detail.  Short and another officer commanded Mr. Bench to exit the vehicle and lie on the ground; the other officer covered Mr. Bench while Short got his canine; the canine and Short then covered Mr. bench while the other officer put handcuffs on him; and, at this point, Mr. Bench had not made any statements to Short.  12/19/2014 Hrg. 66-68.  But at some later point, Short wasn't exactly sure when, Mr. Bench made the statement about how he "may have killed someone."  *Id*. at 70; *see also id.* at 71-72.  Thus, there is a dispute as to the facts surrounding when and under what circumstances the statements were made.

18

**REPLY TO GROUND FOUR**                 **Mr. Bench's jury should have been given the option of convicting him of a lesser included offense.**

Respondent asserts that the OCCA "spent *six paragraphs* discussing why the record showed 'the absence of any evidence. . .' supporting the lesser included instruction for second degree depraved mind murder."  Doc. 30 at 97 (alteration in original).  Not only is this inaccurate - in only one and a half paragraphs does the OCCA consider a solitary piece of evidence in its consideration of the lesser included offense, the testimony of Dr. Grundy - but in those six paragraphs, the OCCA, despite announcing that *Beck v. Alabama*, 447 U.S. 625 (1980), applies, again misapplies *Beck*, insisting on standard more onerous than *Beck* allows. The OCCA incorrectly requires prima facie evidence that not only is sufficient to allow a jury to find Mr. Bench guilty of the lesser included offense - the correct standard - but also acquits him of the capital offense - a requirement beyond that standard.  *Bench v. State*, 431 P.3d 929, 954 (Okla. Crim. App. 2018); *id*. at 955 ("we find that no rational jury could conclude that Appellant acted without the intention of taking Henry's life;" "[W]e conclude that the evidence would not have permitted a rational jury to ***acquit*** Appellant of the charged offense of first degree murder.") (emphasis added).  Just as in *Taylor v. Workman*, 554 F.3d 879 (10th Cir. 2009), and *Hogan v. Gibson*, 169 F.3d 1239 (10th Cir. 1999), the OCCA required evidence which would have resulted in Mr. Bench's acquittal of the capital offense, not just supported the lesser included offense.  431 P.3d at 956. Respondent declines to even address the OCCA's requirement that the evidence support an

19

"acquittal" before a lesser instruction is required.

Within the paragraph and a half discussing whether the evidence is sufficient to support the lesser instruction[9], the OCCA takes a binary approach, viewing Dr. Grundy's testimony regarding Mr. Bench's mental state at the time of the murder as only informative of the insanity defense. *Id*. at 955. The OCCA ignores that the same evidence could allow a juror to find Mr. Bench acted with a depraved mind. Instead, it considers that evidence probative only as to whether it would "have permitted a rational jury to acquit Appellant of the charged offense of first-degree murder." *Id*. Again, the OCCA impermissibly focused its analysis of this evidence in support of the capital crime; it wholly ignored the probative value of that evidence in support of the lesser included offense. *See* Doc. 30 at 119 (acknowledging that the Tenth Circuit "found the OCCA's repeated error was 'focus[ing] on the sufficiency of the evidence to support the capital offense instead of the sufficiency of evidence to support the lesser-included offense.'") (citing *Williams v. Trammell*, 539 F.App'x 844, 850 (10th Cir. 2013)[10] (unpub.).

As shown in the Petition and herein, sufficient evidence supported the giving of a second-degree murder instruction. Relief should issue.

---

[9] The OCCA does, in several paragraphs, make conclusory statements that "there was not any evidence to support an instruction upon second degree depraved mind murder," but it does not even mention the evidence cited in Petitioner's Brief and gives it no analysis. 431 P.3d at 955.

[10] *Williams* involved a stabbing death, as did *Phillips*; yet the Tenth Circuit granted *Beck* relief in both cases. 539 F. App'x. at 853-54 (comparing factual circumstances of stabbing deaths).

**REPLY TO GROUND FIVE**          **The trial court erroneously admitted Mr. Bench's custodial statements in violation of his Constitutional rights.**

Mr. Bench largely stands on the arguments presented in his Petition.  *See* Doc. 19 at 73-79.  As to Respondent's assertion that Officer Brown was unaware of the potential for either an insanity defense or a murder charge, the undisputed facts in the record belie this assertion.  *See* Doc. 30 at 103.  Officer Brown had full awareness that Mr. Bench was contemplating an insanity defense.  During booking, Mr. Bench directly asked Officer Brown whether he had "cause for pleading insanity."  12/19/14 Hrg. 33-34.  During this same interaction, Officer Brown is made fully aware of that a murder charge may follow.  Officer Brown himself testifies that Mr. Bench said he "may  have killed somebody." *Id.* Immediately thereafter, Brown stops the booking process and retrieves a recorder to preserve any additional un-*Mirandized* statements Mr. Bench might make, and he intentionally revisits the topic of insanity in a concerted effort to elicit similar responses.

Tacitly acknowledging Officer Brown's awareness of the potential murder charges and defense of insanity, the State devotes six lines in a footnote to argue that,  because Mr. Bench did not argue the facts supporting Officer Brown's knowledge of the alleged crime and awareness of Mr. Bench's contemplated insanity defense in his OCCA brief, the argument is "not properly before this Court."  Doc. 30 at 103 n.55.  In support, Respondent cites *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2560 (2018)(per curiam) (noting in passing that Ninth Circuit erred when it "considered arguments against the state court's decision that

21

[petitioner] never even made in his state habeas petition"). The Tenth Circuit has recently rejected the use of this exact case to support Respondent's argument, nothing that *Beaudreaux* is a case that did not concern procedural bar. *Johnson v. Martin*, 3 F.4th 1210, 1221 n.7 (10th Cir. 2021). This Court is not precluded from considering these undisputed facts regarding Officer Brown's knowledge of the likely charges Mr. Bench would be facing and a possible insanity defense.

**REPLY TO GROUND SIX**                    **Prosecutorial misconduct served to deprive Mr. Bench of his Constitutional right to a fair trial.**

Mr. Bench largely stands on the arguments presented in his Petition. *See* Doc. 19 at 79-89. Counsel takes this opportunity to reemphasize the prosecutor's severe and egregious misconduct in first stage closing arguments in relation to Mr. Bench's not guilty by reason of insanity defense. The prosecutor engaged in objectively wrong behavior by shifting the burden on insanity to Mr. Bench. He argued:

> The burden is at [the defense] table to prove that [Mr. Bench] is not sane, that he is insane at the time of the crime. The burden is on [the defense]. That burden is beyond a reasonable doubt. They have not gotten there.

Tr. XI 57. Contrary to the OCCA and Respondent, this argument was blatant misconduct and was calculated to overcome Mr. Bench's strong evidence of NGRI. Doc. 30 at 107-08. Mr. Bench simply requests the Court pay particular scrutiny to this aspect of the prosecutorial misconduct claim.

**REPLY TO GROUND SEVEN**          **The heinous, atrocious, and cruel aggravating circumstance is Constitutionally vague, and the evidence was insufficient to support it.**

Mr. Bench stands on the arguments presented in his Petition with respect to Ground Seven challenging the heinous, atrocious, and cruel aggravating circumstance.  *See* Doc. 19 at 89-94.

**REPLY TO GROUND EIGHT**          **Insufficient evidence supports the continuing threat aggravating circumstance.**

Mr. Bench would merely reply to Respondent's assertion that he did not argue below that the continuing threat aggravator did not serve its Constitutionally required narrowing function here.  Doc. 30 at 121 n.65.  Mr. Bench included in his direct appeal brief that "[a]ggravating circumstances must narrow the class of persons eligible for the death penalty." Appellant's Brief, p. 92, OCCA No. D-2015-462 (Feb. 28, 2017) (citing *Maynard v. Cartwright*, 486 U.S. 356, 362 (1988)).  Thus, the narrowing/vagueness aspect of this claim was raised below.

**REPLY TO GROUND NINE**          **Mr.  Bench's  execution offends the Eighth Amendment due to his young age.**

Mr. Bench stands on the arguments presented in his Petition with respect to Ground Nine alleging the evolving standards of decency inherent in the Eighth Amendment preclude his execution for an offense committed when he was 21 years old.  *See* Doc. 19 at 97-98.

**REPLY TO GROUND TEN**          **Cumulative Error.**

Mr. Bench stands on the arguments presented in his Petition with respect to Ground

Ten alleging cumulative error.  *See* Doc. 19 at 98-100.


## CONCLUSION

As shown in his Petition and herein, Mr. Bench's Constitutional rights were violated;

he respectfully requests the Court issue the Writ.  Further, Mr. Bench respectfully requests

the Court grant him any other relief to which he may be entitled, to include an evidentiary

hearing and/or discovery as to any disputed issues or matters in need of further factual

development.

Respectfully submitted,

*s/ Robert S. Jackson*
Robert S. Jackson, OBA # 22189
1300 N.W. 10th Street
Oklahoma City, OK 73106
Telephone:  (405) 602-8614
Facsimile:   (405) 400-2167
bob@bobjacksonlaw.com


*s/Alyssa Donovan Farrell*
Alyssa Donovan Farrell, OBA #32304
P.O. Box 52192
Tulsa, OK 74152
Telephone: (405) 439-1264
alyssa.d.farrell@gmail.com

COUNSEL FOR PETITIONER,
MILES STERLING BENCH

24

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date of filing, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrant:

Ms. Caroline E.J. Hunt
Assistant Attorney General


*s/ Robert S. Jackson*
Robert S. Jackson